

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00680-CV

**IN THE INTEREST OF A.N.C.**, E.L.G., I.C.C.-G., and O.N.C.-G., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-01192
Honorable Martha Tanner, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: March 1, 2023

AFFIRMED

Appellant S.G. appeals the trial court's order terminating his parental rights to his children

E.L.G. (born 2017), I.C.C.-G. (born 2018), and O.N.C.-G. (born 2020).[1] We affirm the order of

termination.

### BACKGROUND

In June of 2020, the Texas Department of Family and Protective Services removed four

children—A.N.C.,[2] E.L.G., I.C.C.-G., and O.N.C.-G—from the home shared by S.G. and the

children's mother, L.C., based on allegations of drug use, domestic violence, and neglectful

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

[2] It appears to be undisputed that S.G. is not A.N.C.'s biological father. The trial court did not adjudicate S.G. as A.N.C.'s father, and A.N.C. is not listed in the portions of the trial court's order that terminate S.G.'s parental rights. While S.G.'s brief makes several references to evidence about A.N.C.'s best interest, he does not argue that he is entitled to parental rights regarding A.N.C.

supervision. The Department obtained temporary managing conservatorship over the children, placed them with caregivers, and filed a petition to terminate S.G.'s and L.C.'s parental rights. The Department also created a family service plan requiring S.G. to, inter alia, participate in domestic violence classes, undergo random drug testing, and engage in individual counseling, including drug counseling, as a condition of reunification. In December of 2021, the Department returned the children to L.C., but the Department removed the children again approximately six weeks later. The Department ultimately pursued termination of S.G.'s and L.C.'s parental rights.

On July 22, 2022 and October 3, 2022, approximately two years after the children's initial removal, the trial court held a bench trial in this case. The trial court heard testimony from four witnesses: (1) the caseworker who removed the children, Erin Villanueva;[3] (2) the legal caseworker, Stephanie Williamson; (3) S.G.; and (4) L.C. On October 5, 2022, the trial court signed an order terminating S.G.'s parental rights to E.L.G., I.C.C.-G., and O.N.C.-G pursuant to Texas Family Code section 161.001(b)(1)(E), (O), and (P) and its finding that termination was in the children's best interest. The October 5, 2022 order also found that termination was warranted because S.G. had not timely asserted paternity.

On December 9, 2022, in response to a motion from the Department, the trial court signed a nunc pro tunc order of termination. The nunc pro tunc order deleted the finding that S.G. had failed to claim paternity but retained the findings that termination was in the children's best interest and was warranted under sections (E), (O), and (P). S.G. now appeals.[4]

---

[3] Both parties' briefs refer to this caseworker as "Erin Villareal." However, the record shows the caseworker identified herself as "Erin Villanueva," and the parties and the trial court referred to her as "Ms. Villanueva."

[4] The trial court also terminated L.C.'s parental rights to all four children. L.C. is not a party to this appeal.

**ANALYSIS**

S.G. challenges the legal and factual sufficiency of the trial court's finding that termination is in the children's best interest. He does not challenge the trial court's findings under sections (E), (O), and (P). We therefore must accept the validity of the unchallenged (E), (O), and (P) grounds. *See In re A.V.*, 113 S.W.3d 355, 361–62 (Tex. 2003); *In re S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), (P).

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d at 683 (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate S.G.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE ANN. §§ 161.001, 161.206; *In re A.V.*, 113 S.W.3d at 362. "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In*

*re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider both the evidence that supports the challenged finding and the evidence that is contrary to the finding. *Id*. at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[5] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[6] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

---

[5] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[6] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest[.]" *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *Application*

Evidence of a parent's "inability to maintain a lifestyle free from arrests and incarcerations" can support a finding that termination is in the child's best interest. *See In re F.M.A.*, No. 04-16-00318-CV, 2016 WL 4379456, at *3 (Tex. App.—San Antonio Aug. 17, 2016, pet. denied) (mem. op.). This is because a parent's arrest and incarceration can expose a child "to potential emotional distress and instability." *See In re O.L.S.*, No. 04-22-00041-CV, 2022 WL 2334551, at *6 (Tex. App.—San Antonio June 29, 2022, no pet.) (mem. op.); *see also* TEX. FAM. CODE ANN. § 263.307(a); *Holley*, 544 S.W.2d at 371–72. Here, S.G. testified that he has been arrested "probably about maybe 10 times" and that he had spent a total of twenty-two years in prison during his life. A March 29, 2022 psychosocial evaluation admitted into evidence shows that S.G. told the evaluator he had been arrested twenty times, including a theft-related arrest that occurred one month before the evaluation occurred. The trial court could have reasonably considered this

evidence in determining whether S.G. could provide a stable home for the children. *See In re O.L.S.*, 2022 WL 2334551, at *6.

A trial court determining a child's best interest may also consider a history of abusive or assaultive conduct by the parent. *See* TEX. FAM. CODE § 263.307(b)(7); *In re A.H.*, No. 04-21-00367-CV, 2022 WL 527661, at *6 (Tex. App.—San Antonio Feb. 23, 2022, pet. denied) (mem. op.). S.G. testified that during this case, he was arrested for allegedly assaulting the children's mother, L.C. While S.G. denied assaulting L.C., he testified that he pleaded no contest to the charges, and L.C. testified that S.G. had hit her on the back of the head. Additionally, the psychosocial evaluation shows that S.G. told the evaluator he had "a history of domestic violence within his relationship." The evaluation further shows that S.G. "report[ed] he had 5 or 6 assault charges for family violence but reports he reached a plea bargain." The trial court could have reasonably concluded that this evidence shows the children could potentially be exposed to violence in S.G.'s home. *See* TEX. FAM. CODE § 263.307(b)(7).

Furthermore, it is undisputed that S.G. has a long history of illegal drug use. A parent's use of illegal drugs can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio August 21, 2019, pet. denied) (mem. op.); *see also* TEX. FAM. CODE § 263.307(b)(8) (trial court may consider history of substance abuse by child's family in determining best interest). The psychosocial evaluation shows that S.G., who was forty-two years old at the time of trial, started using marijuana at the age of nine and methamphetamine and heroin at the age of eighteen and was using those drugs daily until at least the week of the evaluation. Caseworkers Villanueva and Williamson both testified that S.G. admitted his drug use to them. They also testified that S.G. did not resolve his substance abuse issues during this case. "Continued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as establishing an

endangering course of conduct, and that termination is in the best interest of the child." *In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.).

S.G. testified that he stopped using illegal drugs approximately five months before his October 3, 2022 trial testimony. He also testified that he participated in detox programs "about three or four times," and he presented a March 21, 2022 certificate of completion from a detox program. Williamson agreed that S.G. completed a detox program, and she credited him for "try[ing] to go to" Laurel Ridge in May of 2022 to address his substance abuse. However, "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *See In re J.O.A.*, 283 S.W.3d at 346. Williamson testified, moreover, that Laurel Ridge unsuccessfully released S.G. from treatment on May 24, 2022, and she explained that she had "information from [Laurel Ridge] that states that he was unable to remain sober." Additionally, the psychosocial evaluation, which occurred approximately one week after S.G. completed the detox program, shows that S.G. admitted he used methamphetamine on the day of the evaluation and used heroin three days before. Based on this evidence, the trial court was not required to accept S.G.'s testimony that he had stopped using drugs. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.).

Finally, a trial court conducting a best interest analysis may consider a parent's failure to complete a court-ordered service plan. *See In re S.R.*, 452 S.W.3d 351, 367 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Here, S.G.'s service plan required him to submit to random drug tests. Villanueva testified that she tried to send S.G. for drug tests, but she did not believe he ever submitted to any testing while she was involved in the case. She testified that he told her he did not want to test because he had relapsed. Williamson, who began working with the family in June

of 2021 and was still assigned to the case at the time of trial, testified that she also asked S.G. to submit to multiple drug tests and he did not do so. Based on this testimony, the trial court could have rationally inferred that S.G. avoided testing because he was still using illegal drugs. *See, e.g.*, *In re D.E.M.*, No. 04-17-00757-CV, 2018 WL 1831622, at *3 (Tex. App.—San Antonio Apr. 18, 2018, no pet.) (mem. op.).

S.G. disputed Villanueva's and Williamson's testimony that he failed to submit to drug tests. He testified that he had undergone both urinalysis and hair follicle tests, but he stated that he did not "know what [Williamson] did with the paperwork" from those tests. He also testified that communication, referral, and transportation problems had caused him to miss some of the drug tests Williamson asked him to undergo. The trial court was not required to credit S.G.'s testimony over Villanueva's and Williamson's. *See, e.g.*, *In re J.J.M.*, No. 04-22-00504-CV, 2022 WL 17660987, at *3 (Tex. App.—San Antonio Dec. 14, 2022, no pet.) (mem. op.).

S.G.'s service plan also required him to engage in individual counseling and complete a domestic violence course. A court may consider both a parent's "willingness and ability . . . to seek out, accept, and complete counseling services" and his "willingness and ability . . . to effect positive environmental and personal changes within a reasonable period of time[.]" TEX. FAM. CODE § 263.307(b)(10), (11). Williamson testified that S.G. tried to complete the individual counseling requirement, but he was unable to do so because the counseling providers could not offer those services to him "as long as he was actively using" drugs. Additionally, Williamson testified S.G. did not complete the domestic violence classes. She testified that she did not believe S.G. would benefit from more time to complete his services because the case had been open for more than two years by the time of trial. *See id.* § 263.307(b)(11).

S.G. testified that the requirement to engage in domestic violence classes "wasn't part of the original plan" and "was just barely ordered." He also testified, however, that this requirement

was in place "for, like, months." The evidence shows that requirement appeared in S.G.'s service plan as early as December of 2020. While S.G. did not sign the December 2020 version of the service plan and testified that he did not receive that version, Williamson testified that she discussed it with S.G. and believed he understood it. In light of the domestic violence evidence the Department presented in this case, the trial court could have reasonably determined that S.G.'s failure to engage in domestic violence classes was probative of the children's best interest. *See In re H.A.J.R.*, No. 04-21-00220-CV, 2021 WL 5088734, at *5 (Tex. App.—San Antonio Nov. 3, 2021, pet. denied).

Both Williamson and S.G. testified that S.G. loves his children, that his visits with them went well, and that the children were excited to see him during the visits. Williamson also testified that she had visited S.G.'s home and that the home was appropriate. Furthermore, the record shows that the children have been in at least five placements since they entered the Department's care and that at the time of trial, the Department did not have an established permanency plan for them. *See Holley*, 544 S.W.2d at 372 (trial court may consider "the plans for the child . . . by the agency seeking custody" and "the stability of the home or proposed placement"). Nevertheless, Williamson testified that she believed termination was in the children's best interest. She noted that S.G.'s home was the same home from which the children had been removed, and she expressed concern that S.G.'s father, who lived with S.G. at both the time of removal and the time of trial, did not appear to have taken any steps to stop the drug use and domestic violence that led to the children's removal. *See* TEX. FAM. CODE § 263.307(b)(12) (trial court may consider "whether the child's family demonstrates adequate parenting skills," including providing "guidance and supervision consistent with the child's safety" and "a safe physical home environment"). She also opined that "[d]ue to the nature of [S.G.'s] substance abuse," she believed "that he is not able to take care of" the children.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of S.G.'s parental rights was in the best interest of the children. *In re J.F.C.*, 96 S.W.3d at 266. We also conclude that the evidence that is contrary to this finding would not prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *In re J.O.A.*, 283 S.W.3d at 345. We therefore hold that legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule S.G.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's December 9, 2022 nunc pro tunc order of termination.

Beth Watkins, Justice